23-2828 and 23-2831. Mr. Roy. Thank you. Good morning. May it please the Court, Opposing Counsel Michael Roy on behalf of Appellant Dazmine Erving. This Court should reverse the District Court's ruling on the suppression motion and vacate the new conviction in the 2020-2 case. It should further vacate the sentence upon revocation, and if it doesn't, reverse suppression motion, the sentence in both cases. I plan to focus primarily on the protective search ground to start, but if anyone on the panel has any specific questions, I'm happy to jump around and address the judge's concerns. You can start wherever you want. So regarding the Michigan v. Long exception, I think the key in what makes this different from other protective search cases is the totality of the circumstances. It's true that police officers do not need to rule out all innocent explanations, but they also have to consider the totality of the circumstances. That's what the Supreme Court said in Wesby, in Arvizu, and here, almost everything about the context pointed towards an innocent explanation for the furtive movements that Officer Barish saw. This is not like... That's a hard argument to make when there was a gun on the floorboard. Well, there was, but that's retrospective, right? That's a hard argument to make that the officer didn't have reasonable suspicion even though he was right. That's going to be true of every criminal case, especially on appeal. I know, I know. It's just a hard argument. Yeah, I understand. There is always going to be that issue to get over of confirmation bias, especially in the polycourt. And the other problem is you can't argue, at least I don't think you can argue, that he didn't make a furtive movement, right? Because the judge made that credibility determination that the officer said he made a furtive movement and he did. Sure. He didn't have to concede he made a furtive movement. I guess, though, it also depends on what you mean by furtive movement. I mean, furtive movement isn't like a magic incantation that an officer can say to open Sesame the car. Furtive movements is such a broad concept. I agree. I agree. But the fact that your client was on supervised release for weapons violations... Sure. ...makes it even harder, right? I mean, that could be part of it, but it also goes into all the other contexts in the situation. I mean, I'm not sure if with the supervised release, if you're also referring to, it's not discussed in the briefs because the government didn't raise it, but the Supreme Court's decision in Sampson about how parolees can have a condition allowing them to have suspicionless searches. But to be clear, there was no condition of supervision for Irving that he could be searched at any time. The counsel's question on the record. My understanding is, with your totality of the circumstances, the officer did know that there was a prior felony and a prior firearms offense prior to the search, correct? Sure. But, I mean, as this court has said in the past in Johnson, criminal history doesn't really push the needle that much on its own. It's, you know, the fact that he has a criminal record doesn't mean that he no longer has civil rights. They still need suspicion for this case. I mean, there could be an argument that... Can it be part of the totality? It could be. But, I mean, it could also be part of the totality that you would hope someone in his position would be less likely to be carrying a gun 12 days into supervision. He waited to conduct the search, looking at the totality of the circumstances where he started. Right. He smells marijuana. It's dark. The park is closed. There's movement in the back seat. He finds out, after he pulls them out, that he does have a weapons charge. The individual who is with him has given him false information. He is not handcuffed at the scene. He has access to the vehicle that he's going to enter back into after the investigation stops. And so, not one single point, and I agree, counsel, that not one single thing maybe would have given him, but starting where you did, under the totality, at the point that the search was conducted, we have to appreciate all of the things that the officer knew at the time. Well, I'm going to set aside whether he was handcuffed or not, since that's the prong two issue, which I admit Vaccaro is controlling on prong two. But all the other factors you point to, they'll also point towards they're trying to have sex in the park. I mean, it's like if you walk into a kitchen and find a kid next to a cookie jar acting furtively with a guilty look on their face, there's suspicion they did something that they're feeling guilty about. But the immediate inference isn't... So, at that point, I get to look at that kid's hand. I get to look at that kid's mouth to see, did you eat the cookie? Well, sure. But the inference isn't automatically, did they put a gun in the cookie jar? And what matters... But that's not what I'm investigating. Well, it is, though, for a protective sweep. It has to be suspicion of dangerousness, right? If the suspicion is he's breaking park rules by having sex in the park, or this woman's age seems a little suspicious, that doesn't make them a danger to him. I mean... Couldn't he do both? It could be both. That's the problem, right? He could have sex with an underage person and have a gun in the car. Sure. But the way that the facts laid out in this case, they all pointed towards him trying to have an illicit hookup. I mean, he just had a kid with another woman months earlier. He has reason to feel guilty. He has reason to appear suspicious, besides, I'm hiding a gun from the police officer. It might be a different case if Officer Barish had testified, this park is a known area. It's a known area of high crime. It's a known area where drug deals go on at night. It's known that there has been shootings in the park in the past, that gang members meet here. That's not at all what he said. What he said is, this is a place where I commonly find people hooking up in cars. And then he said, yeah, I saw them, and I thought they were hooking up in a car. The one thing that really he can point to is, sure, the furtive movement didn't look like him specifically putting pants on, which is a credibility determination. We defer to the district court for that, but he doesn't have to be specifically putting pants on. I mean, it makes sense that he'd be scrambling if he was having sex in a car, someone shines a light on. He could be doing any sorts of movements. Barish also testified that when he approached, the woman was also adjusting her clothing. It's no indication of dangerousness along with that. He said that he never felt in danger at any point. He explained that everything about Mr. Irving, he was polite, he was compliant. He didn't think that there was actually a danger, and as this court explained in Vaccaro, that's the cornerstone of the Long exception, is officer safety. I think that would also then pivot from there into our third argument about Michigan versus a protective sweep. Nothing about the video makes it look like officer Barish was concerned about his safety. He approached the car after the furtive movement, and he leaves them alone, goes back to his squad car to look them up. He's not watching them. You can see in the video that he's not keeping eyes on them. Even after he finds out about the prior weapons conviction and the supervised release, he's not keeping eyes on them. I mean, obviously, his... That's not the purpose of the protective sweep, though. The purpose of the protective sweep is once he lets them go without arresting them, they go back to the car, they grab the gun on the floorboard, and they shoot him. That's the problem. Well, that could be an aspect of Prong, too, but looking at his actions overall, would an objective observer think that his actions were consistent with someone who was concerned for officer safety? It's not a protective sweep if he wasn't searching... It's not the subjective officer state of mind. I agree. I agree. This is why I'd point to the 11th Circuit's cases, which the government hasn't responded to. Rogers, from the 11th Circuit, is very similar to this. It was a trailer. It wasn't a car, but it was the same thing. It was the officer went in, searched the one place, looked for contraband, ignored the entire rest of the building, didn't even look at the other people inside of it, and then, okay, have grounds for arrest. That's what happened here. I'm not sure if the government disagrees whether Rogers is similar or if they just think this court shouldn't apply Rogers, but to the extent that I understand Rogers' persuasive authority, the 11th Circuit's a different circuit. I think that standard from the 11th Circuit does a lot to address the tension that happens in these protective search cases, where we have to look at it objectively. The Fourth Amendment has the word reasonable in it. There's no real dispute. It's an objective standard, but when someone's conducting a search that no one looking at it would think that it was a protective search, it creates this problem with the public perception of the case. It creates a problem with, I mean, pretextual searches do not violate the Fourth Amendment, but there's always going to be that inherent tension about, well, why is he searching it if everyone looks at it and says it's not a protective sweep, then what are we doing retrospectively saying it was a protective sweep? One thing that struck me about this video is you look at it, and Officer Barish was by the book throughout the video. He did not escalate the situation. He was very careful about Mirandizing Irving. He was basically what you would want as an ideal police contact of police investigating something. The one thing is that he acts seemingly under an assumption that while it's a car, you can search it, and I think even though cars have a lesser expectation of privacy, there needs to be more. It's not just an assumption that a car is searchable. If he's doing a protective sweep, it should actually be a protective sweep. Have we applied it in the civil infraction context? Not that I'm aware of, no. Yeah, are you talking about the Eleventh Circuit standard? No, not that I'm aware of. I would say my understanding is the Eleventh Circuit standard, I see it kind of as an extension of the Supreme Court cases discussing warrant extensions, so for example, Michigan versus Long itself, when they say what an officer is allowed to do, they're allowed to search the areas where they could find weapons. The Ross, which is automobile exception, what would a judge actually authorize for the search warrant? You can't search for undocumented immigrants in a suitcase. Should we move to the sentencing argument then? Sure. With regards to the sentencing argument, pretty simple. The first argument is we believe that the judge impermissibly relied on speculation when he said, you know, I haven't reviewed the prior transcript, but I assume you made similar arguments. Obviously, same judge did the previous sentencing, as the government points out, but there's no evidence remembering what had happened at the previous sentencing. He was admittedly speculating about it, and I think a concrete example of how this materially affected the sentencing hearing is one of Irving's mitigation arguments was about his mental health issues. If you look through the sentencing hearing, his attorney brings it up, he's got these anxiety and other mental health diagnoses and allocution. It's directly related to his gun possession. Not only is he worried about his former gang life coming back to him, he's got general anxiety from news media about mass shootings, et cetera, that he thinks he needs to have a gun on him. He forgoes RDAP to ask for mental health therapy instead, which is pretty rare, I think as most of you are aware. Prisoners usually jump at the chance for RDAP because it can really increase their chances at getting into a halfway house or home confinement during their BOP sentence. He says, no, I'd rather have the therapy. But the judge doesn't even address those mitigation arguments. They get lumped into the other arguments of, oh, probably made in the past, I'm not going to address them again. Were there any other principal arguments that you contend that the judge did not address other than the mental health? The criminal history arguments, which is more related to the criminal history mitigation would have been the same, sure, at the previous sentencing, but we would still say it's error to speculate about what happened at it rather than pull up the transcript. And then also this court's decision in many field, you can't just say, I'm going to do what I did a year ago. You have to actually explain your sentence again on the record. And I see I'm into my rebuttal time. So unless the court has any further questions, I will give the governor a chance. Thank you. Mr. Canestra. May I please the court? Good morning, your honors. Jeff Canestra on behalf of the United States. The district court correctly denied the motion to suppress and it committed no error at sentencing. And I'll begin with the motion to suppress. As your honors have recognized, that's the protective search is a totality of the circumstances inquiry. And here there were multiple circumstances that justified an objectively reasonable belief that the defendant was potentially dangerous and therefore authorized the search. First and foremost, the officer saw furtive movements as he approached the car. Specifically he saw the defendant make a quick and sudden reaching movement to the floorboard behind the driver's seat, after which he quickly sat directly back up. The officer testified that based on his experience, he recognized that as an attempt to conceal. And he further added that there was not consistent with the motions associated with the person getting dressed. Second, as your honors have also noted, the officer confirmed not only that the defendant was on supervised release at the time, and in fact that he had only been recently released from a halfway house, but that his offense in particular was for possession of a weapon, a firearm. So the furtive movements themselves suggest a risk. And then the prior conviction points directly towards a weapon. And on top of that, the additional circumstances really increased and rounded out the danger. This was a stop that occurred around 2.45 in the morning, it's an isolated location in a park with no one else around, only a single officer present with these two people. So in combination, those circumstances justified a reasonable belief that the defendant was potentially dangerous. The defendant's contrary argument is essentially that if he was in the park to have sex, that the movements the officer observed must necessarily have been him attempting to get dressed and not do something else. And that just doesn't follow. It's perfectly likely, as the officer recognized, that they were there to have sex, but that doesn't mean that what he did when he saw the officer approaching was get dressed instead of hide his firearm under the driver's seat, exactly where the officer found it. And the officer expressly and emphatically testified that the movements he saw were not consistent with getting dressed. He described them and said the movements he actually saw would have been significantly longer and different. This is an officer with experience and vice. He knew what those sorts of things looked like, and that just wasn't what he saw here. What he saw was movements consistent with a person getting dressed, I'm sorry, with a person concealing an object under the seat. The district court, of course, observed that testimony, made an express credibility finding on page nine of his order, and made a finding from that that it was a reasonable inference for the officer that the movement was for the purpose of hiding something. In combination with the other circumstances, including the weapons conviction, again, on top of that even, the female's lies, the smell of marijuana, all that justified the officer in taking the very modest step here of looking under the driver's seat to protect his own safety. The defendant concedes that his pronged-to argument is foreclosed by this court's precedent. I'd add it's foreclosed by Supreme Court precedent as well. All that remains is the protective search, then, is the argument that this wasn't within the scope of, or it wasn't subjectively a protective search. I think the facts just don't show that at all. The only search that actually occurred here was the officer leaning into the driver's compartment and looking under the seat at the precise place where he had seen the defendant reach. That's exactly what a protective search ought to be. It's laser-focused on exactly the risk that gave rise to the justification for the search, the risk that there's a firearm or a weapon under the seat. That's the very first place the officer looked. Of course, once he sees it there, there's probable cause, and so as the defendant acknowledged, the officer didn't escalate the situation, he didn't panic, he took it in stride and avoided calling attention to it, but again, there's probable cause already there. In addition, the officer called for backup, and as soon as backup arrived, he placed the firearm. The defendant's reliance on the case out of the Eleventh Circuit is misplaced because there the court expressly said that it was rejecting the protective search argument because quote, the officer's purpose was not to conduct a protective search. So it's expressly relying on the subjective purpose there. That's no longer applicable after Brigham City. The Supreme Court has rejected that, and defense counsel concedes that it is in fact a purely objective standard. And the more recent case that the defendant cites out of the Eleventh Circuit is perfectly consistent with that. The court recognizes that so long as the justification for the protective search exists, then any actions within the scope of the search authorized by that exception are lawful. I'd be happy to answer any questions about probable cause, but given that that hasn't come up, I'll just move to sentencing. So the district court didn't commit any error in sentencing. As this court has repeatedly recognized, context matters when reviewing sentencing court's explanations. As the court noted in Shaw, for example, a defendant can't obtain reversal by identifying statements that appear problematic only when taken out of context. This court reviews the comments in their entirety instead of in isolation, and viewed through that lens, the defendant can't show any error here. In referring to the argument that the defendant had made at the prior sentencing hearing, the court wasn't saying that it was basing its sentence in this case on factual findings about prior arguments. Instead, it was making a rhetorical point about why that argument was not persuasive. As the court recognized at the prior sentencing hearing, the defendant had the exact same guidelines range, he received a sentence right in the middle of that range, and yet even after serving that sentence, he continued to commit the very same crime. That's a very plain spoken and common sense way of saying, I understand you're making this argument, I don't find it persuasive because you continue... There are several mitigation arguments that were made. And so, I do understand and appreciate that we're looking at the criminal history and how we got there, calculating the offense levels or what, the judge makes it clear that your criminal history would have been the same, now higher, because you were in possession of a stolen firearm while on supervised release. So, that would have increased the levels from where they were before counsel. On the other side, just represented though, there were mental health mitigation arguments that were raised, community tie arguments that were raised. Were those principal mitigation arguments? No, and the defendant didn't argue in the briefs that they were. So, he's waived any claim that there was a failure to address the principle of arguments in mitigation in that respect. He makes a passing argument that the court failed to address his criminal history, but the court expressly acknowledged that argument and then said that it was not persuasive given that the defendant continued to commit the same crimes. So, given that, the court adequately addressed the arguments in mitigation. The mental health was really more in reference to the placement recommendation. As defense counsel noted, the trial defense counsel made a point of saying that they were the defendant could receive mental health treatment in lieu of the RDAP program, but the defendant hasn't claimed on appeal that that was a principle argument in mitigation or that the district court failed to address it. The court did give that placement recommendation. And Irving definitely, in the decision, the court definitely makes reference to Irving's decision to have made children. And so, what part of the sentencing transcript, or what are we to do with that comment? Was that a... So, I think, again, that's another circumstance where context matters, because the court referenced the fact that he had a new child, but the court did that in the context of saying that the defendant continued making these decisions that have, again, left children without the support of a father. So, it was defense counsel who injected the children into the proceedings and asked the district court to consider them as 3553A factors, and that's both in the sentencing memorandum and in the sentencing comments. So, at that point, it's fair for the district court to respond to that and to say, I understand you recently had a new child, but the court explained why that wasn't mitigating, because even though the child had apparently been conceived while the defendant was in a halfway house, only 12 days after the defendant got out of the halfway house, he committed the exact same crime under almost the exact same circumstances, which shows that the defendant's children did not deter him from continuing to commit that same offense. And the court's explanation essentially conveyed that the court did not find the children to be mitigating, and I think the context also matters that this happened at the very end of the sentencing hearing, so the court had already explained its 3553A analysis, already imposed the sentence, and here it's essentially offering some parting comments in an attempt to get through to the defendant, I think, and to convey that his actions have consequences on his family. I think the, I guess the drawback to that is when he says, but if you're going to make the choices you make in reference to making children, maybe that's better for them, to suggest that I'm locking you up, I'm making the decision to imprison you because you're making children, that's what I'm hearing from Appellant's argument, is that that weighed in the court's decision. And I think the court's reference to these choices you're making are the choices collectively, it's the choices to continue violating the law by possessing a firearm. Those choices were harming his children and thus were not a mitigating factor because the defendant continued to engage in this conduct notwithstanding his family obligations. So I think that throughout, the court was... But he says it's better for them. Right after he's rendered the sentence, he says, I'm trying to leave your children out of this without the guidance of a father, but if you're going to make these choices you make, maybe that's better for them. And so is he not suggesting there exactly what the Appellant is arguing, that the judge is suggesting I'm imprisoning you because it's almost a detriment to have you around? I don't read the transcript that way. I don't think the court was saying that I'm increasing the sentence because of the children. I think the court was responding to the arguments of mitigation where the defendant asked the that mitigating. Essentially, when a defendant is asking the court to consider the children, they're saying, I need to be around to support this child, and the court's saying, well, maybe that's not the best thing for them. That's not a reason to... Yeah, the defendant's saying, let me out of prison because I'm a father, and the judge is saying, you're not a very good father. In short. And the comment was a bit... They do that all the time. Yeah. When Rod Blagojevich's biggest argument was his family. That's correct. But I think here, he goes a little farther than saying, you're not a good father. When he says, you're making poor choices, you're making poor decisions. Your poor decisions includes producing more children. Is that not a fundamental right to have children? I'm just trying to parse out. I know what Judge Kirsch just characterized, but at one, I'm trying to understand and appreciate what the judge intended. Sure. And I think in context, the court is not saying your poor choice is having children. It's having children and continuing to commit these same crimes that harm your children. And that shows that the fact that you have a family doesn't mean that you should spend less time in prison or that you shouldn't go to prison. And again, the court harked throughout on the fact that the defendant... This wasn't his first warning shot. He had previously gotten a sentence right within the middle of the guidelines range. He's back before the court, the same court, on the same guidelines range, asking for an even shorter sentence. And the court, I think, very commonsensically focused on the fact that when you continue to commit these same crimes, that's going to justify a sentence at least within the guidelines range and the same sentence above what the defendant received before. So I think in context, the comments aren't saying that I'm opposing the sentence because you chose to have children. It's collectively that I'm opposing the sentence because you continue to commit these same crimes. And so can the court hold a defendant's choice to exercise his constitutional rights against him at sentencing? I don't think that's what happened here. So children and family are not a factor like race or religion that should just be entirely off the table at sentencing. Defendants often, as this defendant did, raise their own children as 3553A arguments. At that point, a district court's entitled to respond and say, I don't find this to be mitigating. And I don't think the record fairly reflects that the court imposed a longer sentence because the defendant had children. The court explained that it opposed the sentence because, notwithstanding his children, he kept committing these same crimes only 12 days after his release from the prior one with his new child on the way, committed the exact same crime, which showed that he couldn't be deterred even by his family. And where in the transcript, the sentencing transcript, do we see the court addressing any of Irving's primary arguments in mitigation? So the only primary arguments in mitigation the defendants identified is his criminal history. And the court expressly acknowledges that argument and then responds by saying, essentially, that argument would have applied equally at the prior sentencing hearing. You had the same criminal history, same guidelines range as the last time around, received a sentence, and yet committed the same crime, which very plainly demonstrates, through the defendant's own conduct, that that guideline range is not too short. And are we suggesting, though, that the other mitigation arguments that were raised, those arguments have been waived for purposes of review before this court? Yes, for sure. The defendant didn't identify them, didn't make out that argument in his brief, and the government doesn't believe that the court failed to address any arguments in mitigation either. And is there any further questions we'd ask this court to affirm? Thank you, Mr. Canestra. Thank you. Okay, Mr. Roy, rebuttal. So I'll just briefly address the waiver argument that counsel ended with. We were consistently said that the error is the court engaged in speculation that led it to bypass mitigation arguments. We did not itemize every individual mitigation argument, but it's all the same argument. That's waiver. We didn't itemize each individual one. Yeah, we're not going to extrapolate from your brief. I mean, what did Judge Posner say? We're not pigs hunting for truffles? Well, I disagree. That's what I'm asking the court to do. I think the error was the judge's speculation and then refusing to consider arguments for speculation. It's not primarily a Cunningham-type argument. It's primarily an argument under Nelson and similar cases that the judge can't rely on speculation. Because the judge did address all mitigation arguments when he said, I'm not going to address them because you probably raised similar arguments in the past. He did address them. It's just that his reason and why he addressed them was the error. Regarding the Michigan versus Long, I just want to point out this court's opinion in a stronger case of furtive movement, stronger case of danger to the officers. This court referred to that case as a close call. Again, in this case, the district judge referred to it as a close call on the protective suite. Wherever exactly the line is for reasonable suspicion for weapons, this is close to that line on either side. This is not far to one end or the other. It's right there where the debate is. Regarding the Eleventh Circuit cases, opposing counsel suggests that they don't apply because they relied on subjective instead of objective standard. Yard Road, the more recent Eleventh Circuit case, continued to apply Rogers, continued to recite it as good law, made clear it was obtained as an objective standard. And I see I'm out of time, so unless there's any further questions. Thank you, Mr. Roy. The case will be taken under advisement. Our third